Erik LeRoy, P.C.
500 L St., Ste 302
Anchorage, Alaska 99501
(907) 277-2006
Attorney for Aurora Well Service, LLC

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: : | |
| : | |
| AURORA GAS LLC : | Case No. A16-00130 |
| : | Chapter 11 |
| : | |
| : | |

**Motion for Reconsideration of Order Allowing Payment
to Furie Operating LLC for Gap Period Gas Delivery**

Aurora Well Service, LLC moves for reconsideration of this Court's July 22, 2016 Ex Parte Order permitting the Debtor to pay Furie Operating Alaska, LLC $87,000 for gas deliveries in the gap period between May 3, 2016, the date of this involuntary and the date of the order for relief.  If the Debtor has not yet paid Furie[1], AWS requests that it not pay Furie until this Court considers this Motion.

AWS believes the Debtor misrepresented the interrelationship of Furie and the Debtor, and the immediate need for payment.

The Debtor's 341 meeting was held July 27, 2016.  Prior to the meeting AWS asked the Debtor to produce correspondence between Furie and the Debtor and to be prepared to answer questions about the relationship of the principal of the Debtor's parent, Kay Reick (who owns 100% of Reick Oil LLC which owns the Debtor), with Furie.  Mr. Jones in paragraph 8 of his Declaration in Support of the Ex Parte Motion

---

[1]The wire instructions were to pay Cornocopia Oil & Gas Co., LLC, another company AWS believes is control by Kay Reick.

represented that he understood that "Mr. Reick, acting through subsidiaries, has a minority interest in Furie Operating LLC." This may be true but it significantly understates Mr. Reick's influence and control over both Furie and the Debtor. Whatever percentage interest he holds in Furie Mr. Reick either controls Furie or has a great deal of influence in Furie.  A fair amount of the Debtor's 341 meeting concerned inquiry into Mr. Reick's involvement in all of the companies related to the Debtor and Furie.  Although the recording of the meeting is not yet available, AWS believes Mr. Jones acknowledged that Mr. Reick either controls Furie, or has great influence over its decisions.  The email attached to this Motion supports that conclusion.  It is an exchange between Bruce Webb, the senior vice president of Furie (who also identifies himself as "agent of Reick Oil, Inc. owner of Aurora Gas")  and Patti Polk, an officer of the debtor and it is about Furie continuing to supply the Debtor with make up gas.    Mr. Webb tells Ms. Polk, "there was a lot of yelling on my side, and I had to get Kay involved, but it was agreed to keep selling at the minimum of 500MMCF (sic) per day."  This was a July 13, 2016 email.  It is unclear why Furie changed its position between July 13 and July 22, the date of the Ex Parte Motion.  This email was produced after the 341 meeting concluded.  And Bruce Webb was not at the 341 meeting.

      The problem here is this: one of many gap creditors, possibly controlled by the principal behind the Debtor, demanded immediate payment of a gap period debt.  It is possible that Furie's need for money and Mr. Reick's influence over the Debtor caused the Debtor to request immediate payment of a payable to Furie, which is very close to being an insider of the Debtor.  In its Motion the Debtor states "Furie will stop paying the Debtor unless this payment is made immediately."  It is conceivable that an alternative

way of expressing this problem is, "the principal of the Debtor who is also in control of Furie has instructed Furie to demand immediate payment on threat of termination of Furie's supply to the Debtor of make up gas."  This conflict should be further explored and discussed before the Debtor is allowed to pay Furie the $87,000 for the gap period make up gas.

If the payment was actually necessary, then the Court may have granted the motion, even if M. Reick's control over both the payor and the payee had been fully explored.  But it is not at all clear that the payment was necessary.  First, most of the gas the Debtor sells to Tesoro is the Debtor's gas.  The Tesoro contract is a fixed amount contract, so if the Debtor in any month does not have enough gas to fill the contract, it buys that gas from others sources, including but not exclusively, Furie.  At the 341 meeting Mr. Jones was asked if he investigated buying gas from other sources to make up any shortfall to Tesoro.  AWS believes his answer to this question was vague – that he had had discussions with other suppliers but pricing was an issue.

At the 341 meeting Mr. Jones was asked it he had asked Tesoro if it would accept less than the full monthly contract amount.  He said he had not, but that he had received, between the date of the Motion to Pay Furie and the 341 meeting a proposal from Tesoro which he had not yet had the opportunity to study and was unwilling or unable to discuss.   This proposal needs to be disclosed and explained.  Tesoro needs to be consulted on whether it will accept less than full contract volumes.

Mr. Jones testified in his declaration that without the Furie make up gas the Debtor would have to cease operating.  That is probably untrue for two reasons.  First, there is no evidence that Tesoro would cancel its contract with the Debtor if the full

amount of gas in the contract was not delivered.  Second, it is unclear what Mr. Reick would do.  Mr. Reick could have told Furie to stand in line with the rest of the gap period creditors and to continue to supply make up gas to the Debtor.  He certainly showed he had the necessary influence to reach that result in the email attached to this Motion.  It is unclear what changed between July 13 and July 22.

In summary, AWS objects to the preferential gap payment to a possible insider of the Debtor.  Furie may not only be an insider, it may be controlled by Kay Reick, the principal of the Debtor.  Moreover, it is not clear that the Debtor would cease to operate without payment to Furie.  No effort was made at the time of the motion to determine whether Tesoro would accept less than the fixed amount of gas in the contract.

A key line of questioning at the 341 meeting was what Mr. Reick intended to do with the Debtor which needs large capital contributions to fund well work necessary to restore production to a profitable level.  It Mr. Reick is controlling Furie then he just damaged the Debtor's balance sheet for the benefit of Furie.  The creditor and the Court need to know whether Mr. Reick is going to act in the interests of the Debtor or in the interests of Furie.

Until we know unequivocally that there was no alternative to payment to Furie to retain the Tesoro contract, the Debtor should not be permitted to pay Furie's invoice.


July 28, 2016               Erik LeRoy, P.C.
                            Attorney for Aurora Well Services
                            Alaska Bar Number 8310130


                            /s/ Erik LeRoy

Certificate of Service

I certify that on July 28, 2016, a copy of this pleading was served by electronic means through the ECF system as indicated on the Notice of Electronic Filing.

Erik LeRoy

*/s/ Erik LeRoy*