UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re:<br><br>AURORA GAS, LLC,<br><br>              Debtor. | Case No. A16-00130-GS<br>Chapter 11 |

**MEMORANDUM ON MOTION FOR ORDER RE: ALASKA OIL & GAS
CONSERVATION COMMISSION (AOGCC) BOND**

At the time it filed its petition, debtor Aurora Gas, LLC (Aurora Gas) operated 19 oil and gas wells in southcentral Alaska's Cook Inlet.[1] Aurora Gas leased ten wells from Cook Inlet Regional Inc. (CIRI),[2] and nine wells from the State of Alaska (State).[3] For purposes of this memorandum, the court will refer to the leases with CIRI collectively as the "CIRI leases." However, the wells leased from the State are separated into two distinct groups based upon their locations. Three of the State's leased wells are located in the Three Mile Creek unit.[4] The remaining six wells leased from the State are located in the Nicolai Creek Unit.[5]

The debtor's efforts to reorganize have not proceeded as originally hoped. During the bankruptcy it has incurred significant losses which effectively preclude it from reorganizing. On March 24, 2017, the United States Trustee (UST) filed a motion to dismiss or convert the bankruptcy

---

[1] First Amended Disclosure Statement, ECF No. 179 at 5.

[2] ECF No. 223.

[3] ECF No. 291-2.

[4] *Id*.

[5] *Id*.

case.[6] In response to that motion the debtor attempted to sell its assets.[7] During this process, the debtor realized that it would not be able to sell its nonoperational wells, and began temporarily plugging those wells as it reduced its operations. This included all of the wells leased from CIRI except a disposal well, and the three Three Mile Creek wells leased from the State. Based upon its financial condition, however, the debtor has made it clear that it does not have the resources to permanently "plug and abandon" those wells as required under the leases. The parties have continued the hearing on the UST's motion to dismiss several times during this process, recognizing the benefit of having the debtor properly close its operations, while closely monitoring the debtor's progress and finances.[8] As part of the process, Aurora Gas sought, and obtained court approval, to reject nine leases with CIRI, and the three leases with the State for the Three Mile Creek wells.[9]

While closing the non-operational wells, Aurora Gas continued its efforts to sell the operational wells in the Nicolai Creek unit. The Nicolai Creek wells remain operational, and continue to generate limited revenue for the debtor which has funded the closing of the non-operational wells. Aurora Gas has informed the court that upon resolution of the approved sale it will not oppose the UST's motion to dismiss or convert.

The debtor procured an offer from Aurora Exploration, LLC (AE) to purchase five oil and gas leases with the State for wells in the Nicolai Creek Unit, and various personal property, free and clear of liens, for $100,000.[10] On August 22, 2017, the court entered its Order Granting Motion for

---

[6] ECF No. 170.

[7] ECF Nos. 178-179.

[8] ECF Nos. 191, 205, 209, 215, 226, 243, 261, 263, 281, 297.

[9] ECF No. 298.

[10] ECF No. 267.

Authority to Assume and Assign Certain Mineral Leases and Sell Related Assets Free and Clear of Liens (Order) approving the sale,[11] including assumption and assignment of the debtor's interests in the five Nicolai Creek oil and gas leases.[12] The Order provides that the State must approve all transfers of the debtor's oil and gas leases, and for this reason the sale was expressly made "subject to approval of the State of Alaska."[13] In recognition of the State's authority over the leases, the Order further provides, "[t]he failure of the State of Alaska to approve assignment of the Mineral Leases on terms acceptable to AE shall nullify the Transaction and all parties shall be restored to their positions as of the date of the entry of this Order."[14]

AE filed its change of operator form with the Alaska Oil and Gas Conservation Commission (AOGCC) to "substitute itself for Aurora Gas...as operator of record for the Nicolai Creek Gas Field."[15] Relevant to the matter before the court, the AOGCC is the state agency statutorily authorized to require "the furnishing of a reasonable bond with sufficient surety conditions for the performance of the duty to plug each dry or abandoned well or the repair of wells causing waste."[16] AE requested that it be allowed to post a bond of $200,000 as security for the performance of the plug and abandonment obligations under the leases it was acquiring from Aurora Gas.[17]

---

[11] ECF No. 280.

[12] The leases are identified in Exhibit A to the Motion to Sell Leases and Related Assets Free and Clear of Liens (ECF No. 267-1).

[13] ECF No. 280 at 2.

[14] *Id.*

[15] ECF No. 291-2 at 1.

[16] AS 31.05.030(d)(4).

[17] ECF No. 291-2.

3

On August 31, 2017, AOGCC entered its Decision and Order on AE's request that it be substituted for Aurora Gas on the Nicolai Creek Unit leases (Decision).[18] The Decision is short and to the point:

> Aurora Gas is currently the operator of nine wells on state lands. Three of those wells are shut in and need to be plugged and abandoned: Three Mile Creek Unit (TMCU) 1, TMCU 2 and Three Mile Creek 3. The other six wells – Nicolai Creek 09, Nicolai Creek Unit (NCU) 01-B, NCU 02, NCU 03, NCU 10 and NCU 11 – are capable of production. Aurora Exploration's change of operator form only seeks to be named operator for the wells involved in production and excludes the wells which need to be plugged and abandoned.
>
> By law, AOGCC has a duty to require a bond sufficient to "ensure that each well is drilled, operated, maintained, repaired, and abandoned and each location is cleared." AOGCC's estimate of the cost to plug and abandon the six wells Aurora Exploration seeks to operate[19] is $1,000,000 per well, roughly $6,000,000. Aurora Gas is bankrupt and will not plug and abandon the three Three Mile Creek wells. As a result, the cost of properly plugging and abandoning the wells will fall to the landowner, the Alaska Department of Natural Resources, which has no budget surplus from which to draw the necessary $6,000,000.
>
> The AOGCC cannot, consistent with its duty to require a bond sufficient to cover the estimated cost to plug and abandon the wells, accept a $200,000 blanket bond on all six wells. Aurora Exploration's request for a $200,000 blanket bond is denied.
>
> AOGCC will not approve the change in operator unless Aurora Exploration agrees to one of the following:
>
> 1)   A bond in the amount of $200,000 and Aurora Exploration's agreement to plug and abandon the three Three Mile Creek wells within six months of AOGCC's approval of the change of operator form, or

---

[18] *Id.*

[19] In the Decision, the AOGCC refers to six Nicolai Creek wells AE allegedly seeks to operate. This court's Order incorporated the list of mineral leases attached to the sale motion as Exhibit A, which identified the five Nicolai Creek leases the debtor was assuming and assigning to AE with the sale: lease nos. ADL017585; ADL017598; ADL063279; ADL391471; and ADL391472. *See* ECF No. 267-1. Additionally, in its motion to reject certain leases, the debtor described the Nicolai Creek Unit as consisting of "five wells/leases." ECF No. 268 at 2. This court cannot be certain based on the evidence presented whether a discrepancy between the Decision and the sale order exists, because the Decision references individual wells while the sale motion addressed leases, which potentially could each include more than one well. For the purposes of the present Motion any discrepancy is not material.

4

2)  A bond in the amount of $6,000,000, to be posted over a three-year period, $2,000,000 the first year, an additional $2,000,000 the second year, and an additional $2,000,000.[20]

Roughly a week later, AE filed its Motion for Order re: Alaska Oil & Gas Conservation Commission (AOGCC) Bond (Motion) in this court.[21]  AE charges that the AOGCC impermissibly discriminated against it based upon Aurora Gas' bankruptcy under § 525(a) of the Bankruptcy Code.  Section 525(a) provides in relevant part:

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against ... a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.[22]

On September 15, 2017 AE filed a supplemental memorandum in support of its Motion (Supplement),[23] in which it maintains that the AOGCC's Decision also violated the automatic stay.[24] Specifically, it argues that the bond requirements constitute; (1) the commencement of a proceeding against the debtor to recover a claim, (2) an act to exercise control over property of the estate, and (3) an act to collect a prepetition claim.[25]

---

[20] *Id.*

[21] ECF No. 291.

[22] 11 U.S.C. § 525(a).

[23] ECF No. 303.

[24] 11U.S.C. § 362(a)(6).

[25] 11 U.S.C. § 362(a)(1), (3), and (6).

5

AE now asks that this court order the AOGCC to accept the transfer of the Nicolai Creek leases based upon the posting of $700,000 in bonds to secure the obligation to plug and abandon those wells upon termination.[26] Aurora Gas has joined in the Motion.[27]

The State opposes the Motion on a number of grounds.[28] First, it argues that this court lacks jurisdiction to decide the Motion. Second, it contends that the sale documents and Order preclude the relief AE now seeks. Third, it argues that AE has misstated the availability of Aurora Gas' pre-existing $200,000 bond[29] and the terms of the court-approved sale to AE, and thus AE's request for transfer of the debtor's pre-existing bond to AE must be denied. Fourth, it argues that § 525 cannot apply to the Decision because it was not made solely based upon Aurora Gas' bankruptcy, and the debt will not be discharged by the bankruptcy. Fifth, and finally, the State argues that § 525(a) protects the debtor, not AE, and relief is not available under § 525(a) for this reason either.

The court set the hearing on the Motion on shortened time at AE's request based upon the debtor's precarious financial condition, and the importance of ensuring that Aurora Gas had the ability to properly close the remaining wells if the sale to AE does not close.[30] This has created its own set of problems concerning the evidence to be presented. AE has submitted two affidavits in support of its Motion,[31] and issued several subpoenas to compel the attendance of

---

[26] In its Supplement, AE committed to posting an additional $500,000 to bond the plug and abandonment liability for the five Nicolai Creek wells it seeks to acquire. ECF No. 303 at 11.

[27] ECF No. 306.

[28] ECF No. 309.

[29] ECF No. 309 at 24-31.

[30] ECF No. 295.

[31] ECF Nos. 304-305.

6

representatives of the AOGCC to testify at the hearing, as well as one generically calling for presentation of the person most knowledgeable of the AOGCC's Decision and bond requirements.[32] The State has moved to quash the subpoenas.[33] AE opposed the State's motion to quash the subpoenas, citing the need to establish the basis of the AOGCC's Decision.[34] At the hearing, however, AE released the three subpoenas served on commissioners of the AOGCC, but argued that the subpoena as to the person most knowledgeable should be enforced. AE also asked the court to admit the affidavits of Paul Craig[35] and J. Edward Jones,[36] and offered the witnesses for examination. The State objected to the admission of evidence at the hearing as being premature, and depriving it of the opportunity to conduct discovery.[37]

The court finds that the admission of further evidence is unnecessary. The Decision amply demonstrates that the AOGCC conditioned the transfer of the Nicolai Creek leases from Aurora Gas to AE upon AE's assumption of Aurora Gas' obligations to plug and abandon those wells on State leases that AE did not purchase. The Decision offers no reason for imposing such a condition apart for its statement that:

> Aurora Gas is bankrupt and will not plug and abandon the three Three Mile Creek wells. As a result, the cost of properly plugging and abandoning the wells will fall to the landowner, the Alaska

---

[32] ECF Nos. 311-314.

[33] ECF No. 310.

[34] ECF No. 316.

[35] ECF No. 304.

[36] ECF No. 305.

[37] The court has trouble understanding what discovery the State needed to understand its own Decision.

7

>Department of Natural Resources, which has no budget surplus from which to draw the necessary $6,000,000.[38]

Tellingly, the State does not deny that the Decision was an attempt to collect Aurora Gas' debt for the Three Mile Creek leases. Rather, it defends its action as necessary to provide for the plugging and abandonment of the wells which the debtor will not be able to accomplish. Whatever its motives, the AOGCC's Decision is an attempt to recover on the debtor's prepetition liability. AE has no interest in the Three Mile Creek wells, nor any obligations to the State as to those wells. The AOGCC's conditioning of its approval of the transfer of the Nicolai Creek leases to AE upon assumption of the debtor's pre-petition liability runs afoul of § 362(a)(3) and (6), as well as § 525(a).

Section 362(a)(3) stays any act to exercise control over property of the estate.[39] Section 362(a)(6) precludes any act to collect or recover prepetition claims against the debtor.[40] The debtor's leasehold interests in the Nicolai Creek wells certainly constitute property of the bankruptcy estate subject to the automatic stay.[41] Section 362(b)(4) excepts from the stay the commencement or continuation of a proceeding by a governmental unit to enforce its police and regulatory powers.[42] While the AOGCC's evaluation of the transfer request did not violate the automatic stay, the conditioning of its approval of the transfer upon the assumption of the

---

[38] ECF No. 291-2 at 1.

[39] 11 U.S.C. § 362(a)(3).

[40] 11 U.S.C. § 362(a)(6).

[41] Pursuant to 11 U.S.C. § 541(a), property of the estate is broadly defined to include all legal and equitable interests held by the debtor as of its petition date.

[42] 11 U.S.C. § 362(b)(4).

debtor's prepetition liabilities for wells AE was not purchasing constitutes an act to exercise control over the debtor's leases in an effort to collect upon Aurora Gas' prepetition liability.

Traditionally, the automatic stay protects the debtor or the bankruptcy estate, and third parties may not complain about violations of the stay.[43]  While the stay is not intended to benefit AE, the debtor has joined in the Motion.  The debtor certainly has standing to address the State's efforts to condition the sale of its Nicolai Creek wells upon payment of a prepetition liability in violation of § 362(a).  Accordingly, the AOGCC's Decision violates § 362(a)(3) and (6), and is void.[44]

Closely related to the stay violation, § 525 protects the debtor, or a person with whom the debtor has been associated, from governmental discrimination based upon the debtor's bankruptcy or the failure to pay a dischargeable debt.  The protections afforded by § 525 should be read together with the protections afforded by the automatic stay in this instance to ensure the debtor receives the full benefits of its bankruptcy.[45]  The AOGCC effectively denied the debtor's transfer of five of its Nicolai Creek leases because it insists on recovering the debtor's Three Mile Creek plug and abandonment liability.

---

[43] *Burkart v. Coleman (In re Tippett)*, 542 F.3d 684, 691 (9th Cir. 2008)("the automatic stay provision is designed to protect the debtor against his creditors"); *see also In re Pax America Development, LLC*, 2013 WL 6054744 at *1 (Bankr. C.D. Cal. Nov. 15, 2013)(citing *Tilly v. Vucurevich (In re Pecan Groves of Arizona)*, 951 F.2d 242, 245 (9th Cir. 1991))("Because the only legal beneficiaries of the automatic stay are the debtor and trustee, a creditor does not have standing to seek damages for violation of the automatic stay.").

[44] *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992)("[V]iolations of the automatic stay are void, not voidable.").

[45] 4 Collier on Bankruptcy § 525.03 (16th ed. 2017).  The discussion in Colliers focuses upon the close relationship between § 525(a) and the discharge injunction imposed under § 524.  However, the court discerns no meaningful difference between the automatic stay imposed during the case and the discharge injunction imposed afterwards.

The State defends the Decision on the basis that the AOGCC's desire to recover the Three Mile Creek debt was not the sole basis for its decision. However, the AOGCC's subjective intent is irrelevant under § 362(a) where it seeks to collect upon a prepetition debt owed by the debtor, and seeks to exercise control of its leases. Neither the debtor, nor AE, deny the AOGCC's right to impose a reasonable bond upon AE to secure its own plug and abandonment liability upon transfer of the five Nicolai Creek leases. But, by conditioning approval upon assumption of the debtor's liability for the Three Mile Creek leases it discriminated against the debtor based upon its bankruptcy and inability to pay that debt. The AOGCC's Decision holds the debtor's sale of assets to AE hostage subject to AE's assumption of the Three Mile Creek liability. This violates not only § 362(a), but § 525 as well. Given the impact upon the debtor's sale, and the debtor's joinder in the Motion, the court concludes that § 525(a) has been properly raised. Moreover, the court finds that given the direct impact upon AE as the buyer of the debtor's assets, and the target of the discrimination, AE had standing to raise § 525 as well.

The State attempts to blunt the impact of the Decision by directing the court's attention away from the option to assume the debtor's Three Mile Creek liability, and focusing upon the payment of $6,000,000 as a bond. According to the State, the $6,000,000 bond was reasonably based upon the AOGCC's evaluation that it will take $1,000,000 to plug and abandon each of the six Nicolai Creek wells. The requirement to post a $6,000,000 bond to transfer the debtor's leases to AE may be a proper exercise of the agency's discretion in discharge of its statutory duties. However, AE and the debtor dispute that fact. The remainder of the Decision, including the other alternative for posting an acceptable bond, colors the State's position, as does the amount of the prior bonds required for the Three Mile and Nicolai Creek leases together - a total

10

of $700,000. There is nothing in the Decision to support the AOGCC's conclusion that it will cost $1,000,000 to plug and abandon each well.

The court may not simply ignore the clear import of the AOGCC's Decision and efforts to condition the transfer of the debtor's leases to AE upon payment of the debtor's existing debts. Even without the benefit of additional evidence, which the State declines to provide or allow, the Decision itself evidences the State's efforts to compel AE to assume the debtor's obligations by "offering" as the only alternative a prohibitively high $1,000,000 per well bonding requirement. The severity of this bonding requirement is highlighted by the comparatively minuscule bankruptcy sale price of $100,000 for assignment of five of the Nicolai Creek leases.

The State further argues that the AOGCC's Decision does not run afoul of § 525 because it was not solely motivated by a desire to collect the debtor's liability for the Three Mile Creek leases. Rather, it argues that the AOGCC was attempting to ensure sufficient funds will now be available for AE's plug and abandonment liability. The Supreme Court rejected such a narrow reading of § 525 in *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 301-302 (2003):

> When the statute refers to failure to pay a debt as the sole cause of cancellation ("solely because"), it cannot reasonably be understood to include, among the other causes whose presence can preclude application of the prohibition, the governmental unit's *motive* in effecting the cancellation. Such a reading would deprive § 525 of all force. It is hard to imagine a situation in which a governmental unit would not have some further motive behind the cancellation—assuring the financial solvency of the licensed entity, or punishing lawlessness, or even (quite simply) making itself financially whole. Section 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation—the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be.

11

[Internal citations omitted, emphasis in original]. For these reasons, the inclusion of a second option to post a $6,000,000 bond does not change the fact that the debtor's bankruptcy, and specifically the outstanding Three Mile Creek liability, was the proximate cause for the Decision.

The remainder of the State's arguments are also unavailing. The State argues that the debtor cannot establish that the Three Mile Creek liability will be discharged, rendering § 525(a) inapplicable. It reaches this conclusion based upon the debtor's admission that it will not be able to confirm a plan and continue its operations as required for a nonindvidual debtor to obtain a discharge of debts in chapter 11.[46] However, § 525(a) requires only that the challenged governmental action apply to "a debt that is dischargeable." The State has not identified any exception within § 523(a) for the debtor's prepetition liability for plugging and abandoning the Three Mile Creek wells. Nothing within § 525(a) requires that the debtor actually obtain a discharge, only that the debt be dischargeable.[47]

The State also misconstrues the import of the agreement between the debtor and AE. The sale documents upon which the State relies govern AE's relationship with Aurora Gas, not the State. Similarly, the concerns regarding the effect of the prior bonds have been resolved and have no bearing on whether the Decision violated the Bankruptcy Code.

Finally, the AOGCC's concerns regarding this court's jurisdiction are well taken, as bankruptcy courts are courts of limited jurisdiction.[48] In the Motion, AE requested that this court

---

[46] *See* 11 U.S.C. § 1141(d)(3).

[47] *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. at 303 ("A preconfirmation debt is dischargeable unless it falls within an express exception to discharge.").

[48] Pursuant to 11 U.S.C. § 106(a), sovereign immunity is abrogated as to governmental units with respect to § 362 and § 525.

12

"order all the leases within the [Nicolai Creek Unit] in the operator position to be transferred to AE as they existed on the date of the Petition, including the operator status thereof."[49] This court has no jurisdiction to hear, or evaluate, applications to transfer oil and gas leases. It does, however, have jurisdiction over matters that arise under or in a bankruptcy case.[50] This necessarily includes whether or not an action impermissibly discriminates against the debtor, or violates the automatic stay.[51] The court finds that it has jurisdiction under 28 U.S.C. § 1334(b) to decide whether the AOGCC's Decision violates the Bankruptcy Code, but that is where the court's jurisdiction ends. The court further concludes that it does not have jurisdiction to substitute its judgment for that of the AOGCC; nor would it do so even if it did.

For these reasons, the court finds that the AOGCC's Decision violated §§ 362(a) and 525(a) of the Bankruptcy Code. The court shall grant the Motion, but limit the relief to the determination that the Decision is void. The court will enter a separate order consistent with this memorandum.

DATED:   September 26, 2017.

BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

---

[49] ECF No. 291 at 4.

[50] 28 U.S.C. § 1334(b).

[51] *See Johnston Envir. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir. 1993)(actions alleging violation of the automatic stay are "core proceedings"); *Morrow v. Torrance Bank (In re Morrow)*, 189 B.R. 793, 796-797 (Bankr. C.D. Cal. 1995)(proceeding predicated upon section 525 of the Bankruptcy Code is a core proceeding under 28 U.S.C.A. § 157(b));*United Air Lines, Inc. v. The City of Los Angeles*, 391 B.R. 791, 794-95 (Bankr. N.D. Ill. 2008)(proceedings involving violations of the stay under § 362(a), and to determine whether action was a discrimination under § 525(a) arise under the Code.)

Serve: D. Bundy, Esq.
R. Crowther, Esq.
E. LeRoy, Esq.
C. Christianson, Esq.
K. Perkins, Esq.
ECF Participants per NEF